May Term, 1850.

DODGE
v.
LACEY.

(1) See *ante*, p. 157.

---

### DODGE *v.* LACEY.

An action for slander. Plea—not guilty. The plaintiff alleged that the defendant, in a conversation with one Mrs. *R.* of and concerning the plaintiff's character for chastity, falsely, &c., spoke, &c., the following words: "Mr. *Parvin* says that Mrs. *Lacey* is not a decent woman, and keeps a public house, (meaning a bawdy house). Mr. *Parvin* said there was not a decent woman in the house, (the plaintiff's house meaning). The church alleges nothing against you (Mrs. *R.* meaning) except that you live with Mrs. *Lacey*. You lie under suspicion only by living with Mrs. *Lacey*." Averment, that by these words the defendant meant and intended that the plaintiff had been guilty of fornication. The second count charges these words: "There are 15 members of our church who will be qualified that they believed that Mrs. *Lacey* is a base woman and keeps a public house, (a bawdy house meaning). *J. C.* told me that he did not believe that Mrs. *Lacey* was a decent woman, and that he believed that she kept a public house, (a bawdy house meaning). It struck me, when Mr. *C.* told me so, that that house (meaning plaintiff's) was as bad as any house of ill-fame in the city of *New York.*" Averment, that by these words the defendant meant that the plaintiff had

been and was guilty of fornication. *Held,* that the innuendoes attached to the words "public house," namely, "meaning a bawdy house," are unwarranted. The words, in their ordinary acceptation, do not mean a bawdy house.

*Held,* also, that the averment that the defendant meant by the words charged, that the plaintiff was guilty of fornication, was not warranted, and that such was not the natural meaning of the words.

*Held,* also, that in this case the words "house of ill-fame" meant nothing more than that the house was one of bad reputation.

*Held,* also, that if the defendant was in the habit of using the words "house of ill-fame" to convey the idea of "bawdy house," the declaration, by way of inducement, should have alleged that fact; and the defect in the declaration was not cured by the verdict.

<div style="float:right">

May Term,
1850.
___

DODGE
v.
LACEY.

</div>

APPEAL from the *Vanderbugh* Circuit Court.

<div style="float:right">

*Tuesday,*
*October 22.*

</div>

BLACKFORD, J.—This was an action of slander brought by *Polly Ann Lacey.* The declaration contains two counts. Plea—not guilty. There were also some special pleas. Verdict and judgment for the plaintiff.

The first count alleges that the defendant, in a conversation with one Mrs. *Rasor* of and concerning the plaintiff, and of and concerning her character for chastity, falsely and maliciously spoke and published the following words of and concerning the plaintiff, and of and concerning her behaviour, and of and concerning her character for chastity, namely: "Mr. *Parvin* says that Mrs. *Lacey* is not a decent woman, and keeps a public house, (meaning a bawdy house). Mr. *Parvin* said there was not a decent woman in the house, (the plaintiff's house meaning). The church alleges nothing against you, (Mrs. *Rasor* meaning,) except that you live with Mrs. *Lacey.* You lie under suspicion only by living with Mrs. *Lacey.*" Averment, that by the said words, the defendant meant and intended, and was by said Mrs. *Rasor* understood as meaning and intending, that the plaintiff had been and was guilty of fornication.

The second count states that the defendant, in a conversation with one *Charles Jones,* falsely and maliciously spoke and published of and concerning the plaintiff, and of and concerning her behaviour, and of and concerning her character for chastity, these other words, namely: "There are fifteen members of our church who will be

May Term,
1850.

DODGE
v.
LACEY.

qualified that they believed that Mrs. *Lacey* is a base woman and keeps a public house, (a bawdy house meaning). *Joseph Caldwell* told me that he did not believe that Mrs. *Lacey* was a decent woman, and that he believed that she kept a public house, (a bawdy house meaning). It struck me, when Mr. *Caldwell* told me so, that that house (meaning plaintiff's) was as bad as any house of ill-fame in the city of *New York.*" Averment, that by the said words, the defendant meant and intended, and was by said *Jones* understood as meaning and intending, that the plaintiff had been and was guilty of fornication.

If the declaration contains no cause of action, we need look no further into the case.

It is clear that the innuendoes attached to the words "public house," namely, "meaning a bawdy house," are unwarranted. The words, "a public house," do not, in their ordinary acceptation, mean a bawdy house.

It is also clear that the averments that the defendant meant, and was understood to mean, by the words charged, that the plaintiff had been and was guilty of fornication, is not warranted by those words. That is not the natural meaning of any of the words laid. It does not follow that because a woman is not decent, or because she is base and keeps a public house, or because her house is as. bad as any house of ill-fame, that she is guilty of fornication.

We must, therefore, lay the innuendoes, to which we have thus particularly referred, out of the case.

There are no extrinsic facts set out in the declaration, by way of inducement, that might aid in showing the suit to be maintainable. The consequence is, that if the declaration can be sustained, it is upon the ground that the words relied on are, in themselves, actionable.

The charging of a woman with fornication, adultery, or whoredom, is actionable by statute. R. S. p. 691. But none of the words here laid constitute any such charge. If the words are actionable, it is because they charge the plaintiff with the commission of some indictable offence; but we do not think that any such charge is made. The words that come the nearest to it are the following: " *Jo-*

*seph Caldwell* told me that he did not believe that Mrs. *Lacey* was a decent woman, and that he believed that she kept a public house. It struck me, when Mr. *Caldwell* told me so, that that house was as bad as any house of ill-fame in the city of *New York.*" We have had a good deal of doubt as to this part of the case. There are many *English* words, the ordinary meaning of which is not easily given. The words " house of ill-fame," are of that character. We have concluded, however, that these words are too general to convey, of themselves, the idea that the plaintiff's house was a bawdy house, or other disorderly house, the keeping of which was an indictable offence. Considering the words " house of ill-fame," with the other expressions connected with them, namely, that the plaintiff was not a decent woman, and kept a public house, we cannot say that their natural meaning is anything more than that the house was one of bad reputation. And the words in question, taken in that sense, are not actionable. If the defendant was in the practice of using the words " house of ill-fame," to convey the idea of a bawdy house, or other disorderly house, the keeping of which was indictable, the declaration should, by way of inducement, have alleged that fact; or if those words were spoken under circumstances which showed them to have been used in an actionable sense, the extrinsic facts, with the necessary colloquium and innuendo, should have been alleged. There are, however, no such allegations in the declaration, and it cannot, therefore, be sustained.

The defect in the declaration, of which we have spoken, is not cured by the verdict. *Goldstein* v. *Foss*, 4 Bingh. 489.—*Hays* v. *Mitchell*, 7 Blackf. 117.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, with instructions to the Circuit Court to arrest the judgment, each party paying his own costs in that Court. Judgment for costs here.

*G. Jones* and *C. Baker*, for the appellant.

*J. Pitcher*, for the appellee.