## HAMILTON v. LOWERY.

[No. 4,845.    Filed May 19, 1904.]

LIBEL.—*Complaint.*—The statute dispensing with the necessity of showing, by the statement of extrinsic facts, the application of the alleged defamatory words to the plaintiff, does not dispense with the allegation of such facts to show the meaning or application of ambiguous language or language not actionable *per se.*    p. 186.

SAME.—*Complaint.*—*Innuendo.*—Where in an action for libel, plaintiff, by innuendo, ascribes a particular meaning to the words complained of, he must abide by it, and can not at the trial reject that meaning and resort to another.    p. 188.

SAME.—*Complaint.*—*Innuendo.*—*Questions of Law and Fact.*—In an action for libel, the meaning of the defendant, as averred by innuendo, is a question of fact to be decided by the jury; but it is for the judge to decide, as a matter of law, whether the matter complained of will bear the meaning ascribed to it by innuendo.    p. 188.

SAME.—*Publication.*—*Complaint.*—A complaint for libel alleging that defendant published, and caused and procured to be published, a certain libel addressed to the plaintiff sufficiently shows publication, without averring in detail the manner or extent of publication.    pp. 188, 189.

SAME.—*Publication.*—*Complaint*—A complaint for libel alleging that defendant meant and wanted to be understood by the publication, "and was so understood," that the plaintiff was guilty of adultery with a certain person named is bad where it was not alleged by whom the defendant was so understood, or that he was so understood by any third person.    pp. 189, 190.

From Huntington Circuit Court; *A. H. Plummer*, Special Judge.

Action by Ida M. Hamilton against John Lowery. From a judgment in favor of defendant, plaintiff appeals. *Affirmed.*

*J. S. Branyan* and *Milo Feightner*, for appellant.

*C. W. Watkins, H. C. Morgan* and *Steele & Dicken*, for appellee.

BLACK, J.—The appellant, Ida M. Hamilton, brought her action against the appellee, and the court below held each of the three paragraphs of complaint insufficient on demurrer. In the first paragraph it was alleged that, before the committing of the grievances thereinafter mentioned, the appellant was a married woman, and the wife of one W. L. Hamilton, and that she resided in Banco, Huntington county, and bore a good reputation and name, in the neighborhood in which she lived, for virtue and chastity, and had the respect of her neighbors and relatives; that the appellee, on, etc., "knowing the premises aforesaid, falsely and maliciously, with the intention of injuring plaintiff in her good name and reputation, and to disgrace her in the eyes of her acquaintances, composed and published, and caused to be published, a certain letter concerning this plaintiff, in the words and figures following, to wit: 'Ask your wife wht she Put the light after midnigt wednesday night for and lets it burn when you are Here. We are wathing them you are a fool. What do you think of them childr.' Plaintiff avers that defendant meant and wanted to be understood by said publication, and was so understood, that plaintiff, the said Ida M. Hamilton, was guilty of adultery with Emmett Hamilton, who was her brother-in-law and a boarder in her family, and that she was guilty of having illicit intercourse with the said Emmett Hamilton. Wherefore plaintiff, by reason of the foregoing premises, had been injured in her good name and reputation, and

suffered great mental anguish and distress of mind, to her damage in the sum of," etc.    The second paragraph was like the first, except that the contents of the letter were therein set out as follows:    "If you knowed what is going on in your Home you would ship Boarder.    It was sam thursday night don't Be deceived it is straigt this is no enemy to your home.    He got thick with the last woman where He worked.    People in this town ant asleep."    The third paragraph was like the others, except that the letter was set out as follows:    "When you Let emett Hig you turn the Lamp dow as we went Past thirsday morning we saw Him Having unbecoming Conduct toward you if you will Let him do that and the lamp Burning what would you do in the dark.    He trid to ruin a family where He Come from and He Will do it Here we will keep an eye oot and there will be a Publick Notice Put up in Banco.    Shame to such a woman.    Ida Hamilton.    Bill Has Been notified of this."

Our statute dispensing with the necessity of showing, by the statement of extrinsic facts, the application of the alleged defamatory words to the plaintiff, does not dispense with the allegation of such facts to show the meaning or application of ambiguous language or language not actionable *per se.*    "Innuendoes are mere corollaries from antecedent allegations.    They can not supply averments of facts or extend the meaning of words.    They can not raise questions of fact.    An innuendo is explanatory of a subject-matter sufficiently expressed before."    *Emig* v. *Daum,* 1 Ind. App. 146, and cases there cited; *Bidwell* v. *Rademacher,* 11 Ind. App. 218.    "Where an inducement or colloquium and innuendo were required by the common law in a declaration, they are required under the code in a complaint, so far as relates to the subject-matter."    *Emmerson* v. *Marvel,* 55 Ind. 265; *Hart* v. *Coy,* 40 Ind. 553; *Ward* v. *Colyhan,* 30 Ind. 395.    "Where words are used, not actionable within themselves there should be some prefa-

Hamilton *v.* Lowery.

tory allegation of some extrinsic matter, or an explanation of the particular and criminal meaning of the words. This introductory matter having been stated, the colloquium should connect with it the speaking of the words complained of, leaving to the innuendo its proper office of giving those words that construction which they bore in reference to the extrinsic fact, or explanation of their particular meaning." *Harrison* v. *Manship,* 120 Ind. 43. The office of an innuendo is to connect words, not in themselves actionable, with some precedent facts formally averred, which explain their meaning. *Watts* v. *Greenlee,* 2 Dev. (N. C.) 115. It is not necessary that the extrinsic facts to support the innuendo that the defendant meant to impute certain conduct be inserted in any particular place or portion of the complaint, but such extrinsic matter must be somewhere shown by statement of facts. *Brittain* v. *Allen,* 2 Dev. (N. C.) 120. "The innuendo avers the meaning of the words as intended by the speaker, and as understood by the hearers. It must be warranted by the colloquium, or by the introductory matter; that is, must be a rational inference, that they were so meant, and so understood." *Brittain* v. *Allen, supra.*

In *Watts* v. *Greenlee, supra,* it was said by the court: "The words are, 'all Watt's girls are big.' There is no colloquium charged, by which any other than the ordinary meaning of the words can be given to them. They are to be taken abstracted from any context, for none appears. The innuendo is, 'thereby meaning, big with child to his negro Ben.' It is going far enough, and perhaps too far, without a colloquium, or introduction, to say that big means big with child; but there can not be the least pretense for saying it means big with child by negro Ben."

In *Hart* v. *Coy, supra,* the complaint alleged that the defendant, in a conversation, had while plaintiff, with other ladies, was standing in front of defendant's store, to and of the plaintiff, and of and concerning plaintiff's character,

uttered, spoke, published, and declared "these other false, scandalous, malicious, and defamatory words * * * 'I' (defendant meaning) 'have seen women steal yarn before;' then and there, and thereby, meaning that the plaintiff had been, and was, guilty of larceny, and so understood by the persons who heard defendant so speak, to wit, at the county aforesaid." It was said by the court that the words were not actionable *per se,* and that the complaint was insufficient for want of an inducement.

It is true that there is an important distinction between libel and oral slander, and that in cases of libel any words will be presumed to be defamatory which expose the plaintiff to hatred, contempt, ridicule, or obloquy, or which tend to injure him in his profession or trade, or cause him to be shunned or avoided by his neighbors. *Johnston* v. *Stebbins,* 5 Ind. 364; *Prosser* v. *Callis,* 117 Ind. 105; *Patchell* v. *Jaqua,* 6 Ind. App. 70. But if the plaintiff, by innuendo, ascribes a particular meaning to the words complained of, he must abide by it; he can not at the trial reject that meaning and resort to another. Folkard's Starkie, Slander and Libel (Wood's Notes), §446. The meaning of the defendant, as averred by an innuendo, is a question of fact, to be decided by the jury. But it is for the judge to decide, as matter of law, whether the matter complained of will bear the meaning ascribed to it by innuendo. *Id.* §561. Before the modern legislation relative to procedure, it was necessary in England, "to state, by way of inducement, in the introductory part of the declaration, a prefatory averment as to the meaning of the alleged slander or libel; and then, in another part of the declaration, to allege, by innuendo, that the words were used in that sense, or to convey that meaning." *Id.*

The complaint in the case at bar may be said sufficiently to show a publication. The word published in a complaint for slander, *ex vi termini,* imports an uttering of the words in the presence and hearing of others. *Duel* v. *Agan,* 1

Code Rep. (N. Y.) 134; *Watts* v. *Greenlee, supra; Burton* v. *Burton,* 3 G. Greene (Iowa) 316; *Hanning* v. *Bassett,* 75 Ky. 361.

The basis of the action for libel is damages for injury to the character of the plaintiff in the opinion of others, and that can only arise from a publication to third persons, so that a complaint showing that the defendant composed, wrote, and delivered to the plaintiff a certain libel, addressed and directed to the plaintiff, would not show a publication; while a complaint that the defendant published, and caused and procured to be published, a certain libel addressed to the plaintiff, would sufficiently show a publication. *Waistel* v. *Holman,* 2 Hall (N. Y.) 172.

Any words that denote a publication are sufficient. "To publish means to make publicly known, to proclaim to the public, etc. It was not necessary that the complaint should aver in detail the manner or extent of publication. It was necessary that it should aver that the libel was published. It would depend upon the evidence whether the averment was true in fact." *Indianapolis Sun Co.* v. *Horrell,* 53 Ind. 527.

The complaint before us is very loosely drawn. It is lacking in proper innuendoes for the explanation of words in writings set forth. It is said that the appellee meant and wanted to be understood by the publication, "and was so understood," that the appellant was guilty of adultery with a certain person named, who was her brother-in-law and a boarder in her family, and that she was guilty of having illicit intercourse with that person. It is not stated by whom the appellee was so understood, or that he was so understood by any third person. It can not be urged that either of the publications should be regarded as libelous in any other sense than as charges of adultery or illicit intercourse of the appellant with the particular person named, or that she was injured except by and through such a charge. She can not be permitted to resort to any other

meaning of the writings. There are not in this complaint, or in either paragraph thereof, sufficient allegations of matters of fact, as such, to enable the court to say that either of the writings, separately considered, did amount to such a charge. We can not conclude to give sanction to such pleading, and must hold that the court did not err in holding each paragraph of complaint insufficient.

Judgment affirmed.

Robinson, J., concurs in the conclusion.